Judge Owen, and may it please the Court, I'm Matt Frederick representing the defendants. The District Court lacked subject matter jurisdiction because the plaintiffs lacked standing. They have not shown an existing injury, and their attempt to base standing on past injury or speculation about future harm is foreclosed by binding precedent. But even if the District Court had jurisdiction, it shouldn't have found liability because requiring a signature on a voter registration application is consistent with the NVRA, and it does not impose a material burden on the right to vote. And finally, even if the state had violated the NVRA, the District Court's punitive overbroad injunction would be improper because it goes far beyond what is necessary to cure the alleged violation or remedy the harm alleged by the plaintiffs. And I'll begin with standing because it's straightforward and sufficient to resolve this appeal. The plaintiffs lack standing because they have not shown a concrete injury in fact. They would have standing. A plaintiff who was not currently registered to vote and intended to attempt to do what the plaintiffs did would arguably have standing. But the problem here is that the plaintiffs concede that at the moment they filed their complaint, each one of them was registered and able to vote at their current residence. And so, as a result of that, they can't establish an existing injury. They have to rely on a future injury. But as the District Court's opinion makes clear, all they provided was the bare possibility that they might move at some point. But they couldn't vote for the people in their district where they moved, right? I mean, in other words, it'd be a different ballot. Well, that's correct. Now, it's correct only if they moved to a different county. And that's a critical difference. Because Texas has county-based voting, a move within the county would not actually provide standing to bring the claims that the plaintiffs bring because the change of address form under Texas Election Code Section 15.021D would be effective to change the address and change the registration within the county because there's no need to re-register. But when somebody moves to a different county, then a change of address form in order to update their voter registration in the new county would actually have to function as a voter registration application. And as far as standing goes, that's a merits issue that I'm happy to talk about. But as far as standing goes, the plaintiffs, in order to satisfy the Article III requirements, would have to provide definite evidence of a concrete plan to move to a different county. And the bare possibility that they might or statistics that some people do is not enough. In fact, that's the kind of someday intention that the Supreme Court has consistently held is not sufficient under Article III. At most, what the plaintiffs have alleged here is a past injury. And we know from cases like Summers v. Earth Island Institute and this Court's decision in Machete Productions that a past injury is not enough to establish Article III standing. In Machete Productions, for example, the plaintiff alleged that they had been wrongfully denied a film grant in the past. That was the only injury they alleged. They didn't have standing because they couldn't allege that they had any pending grant applications or that they intended even to make another movie in the relevant series. And the plaintiffs' purposes of seeking prospective injunctive relief are in no better position than that plaintiff. In fact, if these plaintiffs had standing under Article III, so would any person who has a Texas driver's license. And that can't be right. The plaintiffs don't have standing. The district court did not have jurisdiction. And so that is sufficient to reverse and render judgment for the State. Even though it's not necessary to reach the merits, I do want to address them briefly because the NVRA shows that Congress plainly anticipated that a voter registration application or a driver's license document that would be treated as such would be signed by the applicant. Section 2504A conditions the State's obligation to treat a driver's license application as a voter registration application on that very element. It must be signed by the voter. What plaintiffs have tried to do here is create a loophole in the signature requirement by relying on a different subsection, 2504D, which deals only with change of address transactions. Now, there are two problems textually with that. The first is that subsection D does not say that a change of address form shall serve as a voter registration application. It says that it shall serve to update the voter registration address. And there's no reason to think that Congress intended without some specific textual basis to create an implied exception to the general signature requirement by omitting a signature requirement from subsection D. But it doesn't have one, right? It doesn't. And, but as I said, it also does not expressly say that these transactions shall be treated as voter registration applications. The problem that we have, it's what I alluded to earlier, is the distinction between in county and out of county moves. In some cases, a change of address transaction is just a change of address transaction. If you move in county, the voter registrar is the same. They can update your information. Not a problem. You're not re-registering to vote. But if you move out of county, then if you were to try to use your change of address to update your registration, the effect of that would be to apply to register to vote. And so that would run into the provision of subsection A, which indicates that Congress clearly anticipated that when we're treating these Department of Public Safety transactions as voter registration transactions, we expect that there will be a signature. The plaintiffs... The only reason you disallow internet while allowing mail, the only reason is you think you're required to have an in-person signature? In other words, there's no other government interest you're trying to achieve? Well, I think that there is a governmental interest underlying the signature requirement. To be sure, we do believe that under state law, we are required to have a signature. And that serves at least a couple of the purposes that Congress intended to further in the NVRA, which is protecting the integrity of the election process and maintaining the accuracy of voter registration rolls. This goes to a point that the plaintiffs make, which is, in their view and the district court's view, because the DPS has these previously captured electronic signatures on file, they think, well, you don't need a signature at all. Why don't you just use the old signature that you've already got on the computer? Well, the reason is that the signature itself and the act of signing is significant under section 2504A. Congress anticipated that you would sign, and that's a significant act because the voter is attesting to the accuracy of the information and his or her eligibility to vote. And so that goes directly to the legitimate state interest in deterring voter fraud and ensuring accuracy in the voter rolls. The other problem with the plaintiff's attempt to argue that we should just use electronic signatures is that the DPS is not aware of the fact that there is a signature on the computer. Let me stop you right there. And maybe I misunderstand the facts. When you're changing address or updating, renewing your license, I thought I read, and I may be wrong. People sign it and mail it in, but no one ever compares it to the on-file electronic signature. They just rely on the electronic signature. So there's really no comparison. In other words, you could check a box in a test without having to sign, couldn't you? What happens, and the testimony from the Secretary of State and the DPS shows that what happens is if you do a mail-in or in-person form, you do sign the application on paper. And then at the DPS, they have an electronic, they call it a point-of-sale capture. So it's like if you sign for your credit card receipt. And they capture an electronic signature. Now it is true that in the ordinary course, the DPS would send that electronically captured signature to the Secretary of State. But it's not true that the signature itself serves no purpose, and it's not true that it is never used for anything. There's testimony at ROA 2298 and ROA 2523 to 24 that explains that even though ordinarily you don't need to use these, they could be used to investigate claims of fraud or identity But I think the main point is that at the moment of registration or renewal, that signature actually serves a legitimate function that is recognized by the NVRA itself. But you could still check a box, say, by checking this box, I swear under penalty of perjury the following, or the foregoing. Is that possible? Well, I suppose, as a technological matter, I guess What's the difference? You could prosecute both, couldn't you? Well, the difference, and this goes to the NVRA itself, I think the difference is that if we didn't require a signature, that would be inconsistent with Section 2504A. That section says the DPS application shall serve as a voter registration application unless it is not signed by the voter. So, whether or not it's possible to do it that way, I don't think it's possible to read the NVRA to compel the state to do it that way. How do other states do online registration with signatures? Based on the amicus brief in this case, it appears, based on the examples they give, that those states are not requiring a signature. Now, I don't know whether some states handle it a different way, but I think our point, this goes to another point about the plaintiff's argument about the electronic signature. I think they approach it from the wrong angle. Their argument is, well, nothing in the NVRA requires the state of Texas to only use an actual signature. But that's not the right question. The question is, did Congress forbid the state to do, as state law provides, which is have people sign the application when they are registering to vote or signing a document that will be used to register them to vote? Well, what Congress required was simultaneous registration or simultaneous updating of both databases. Well, Congress, yes, they required that it be a simultaneous transaction unless the person doesn't sign it. That's 2504A. And that's what's missing. That's one of the things that's missing from the plaintiff's arguments under subsection D is it's a different issue, and it's not at all clear that Congress somehow intended that, you know, the change of address to be a simultaneous voter registration. I don't think there is textual support for that notion. But I want to be clear that even if we're wrong about the NVRA, the district court's injunction is improper. I want to focus on two things. First, the district court's injunction is vague and overbroad. It provides at ROA 3354 for a catchall injunction against, quote, implementing practices and procedures that violate sections 2503, 2504, and or 2507 of the NVRA. In this court's decision in OCA Greater Houston v. Texas, it rejected a similarly overbroad generic catchall injunction. That is overbroad on its face. The second point is, as we've explained, for example, on pages 39 to 42 of our opening brief, this injunction is unduly burdensome in its particulars because it is not narrowly tailored to the violation allegedly proven or the harm alleged by the plaintiffs. If there were a violation here, the solution is simple. Order the state to do what the plaintiffs allege that it ought to do. But the district court went much further in detailed, intrusive provisions that are not necessary to cure the violation, not necessary to provide complete relief to the plaintiffs, and not remotely compelled by the NVRA. Thank you. I apologize to the court for my hoarseness. I want to address the standing arguments first. I think counsel's main argument is that the likelihood of future injury in this case is remote, that we didn't have the kind of evidence, for example, that the court found lacking in the Machete case as to what would happen in the future for these plaintiffs. I want to step back, however, and make clear that our argument first is that these plaintiffs suffered an injury in the past that remains unaddressed and unredressed today. That is, they suffered a denial of their rights under the NVRA to have their change of address transaction or their renewal transaction serve as a simultaneous change of address or renewal for voter registration purposes. When they interacted with DPS online, they were not given the NVRA-mandated simultaneous voter registration change. So that was their injury in the past. And there's no claim here that that injury has been redressed. The gist of the defendant's position in the briefs was they were registered to vote, and no harm, no foul, because they were ultimately registered to vote by the time this case was filed. Well, let's remember how they were registered to vote. They were registered to vote by the act of casting a provisional ballot. You'll recall, for example, that Dr. Woods, who had moved to Harris County, called up to check his registration status on Election Day, and they said, well, it doesn't look like you're registered. You're still registered in Dallas County, but you're not registered here. But come on in, and you can cast a provisional ballot, I guess, which he did. And he was later informed that his provisional ballot did not count. But that act of casting a provisional ballot, in fact, registered him to vote under Texas law. So that sort of sets up a bit of a catch-22 in the state's view. You know, a citizen is sort of put to the choice of casting a provisional ballot or not casting a provisional ballot. But if you cast a provisional ballot because you want to try to vote, then you lose your right to try to vindicate the NVRA violation that you proceed. So again, to return to my point, the injury that was suffered by the plaintiffs in the past, the procedural default under the NVRA has not been redressed, and it is not redressed for standing purposes by the fact that they were ultimately registered to vote. There is no case that says that, and the cases that are out there say it is not necessary. You know, that NVRA does not require total disenfranchisement. As I understand it, because I would have thought that the injury is not being registered to vote, and I take your point that you try to satisfy standing by essentially abstracting from the concrete right to be registered to sort of a more abstract procedural right. What case allows you to satisfy standing in that abstract fashion? Well, we rely on the Cox case and the Arcia case, both Eleventh Circuit cases, the Arcia being the more recent one. But Cox, both of those voters, in both cases, the plaintiffs were not disenfranchised. The NVRA violations occurred and the Eleventh Circuit held it was not necessary to have the franchise denied. Cox is really the closer case, but in both of those cases, that was the result. And again, the other thing we rely on, I would say, is the language of the NVRA itself, which gives a private right of action to a person aggrieved by a violation of the statute. Correct me if I'm wrong. I thought in Cox that the registration had not yet been accepted at the time of the suit. That is true. The registration had not been accepted at the time of suit. But here there's no dispute, right? You guys, your clients were registered at the time you filed the suit. The way this case worked out, yeah, I mean, that is true, but that is not, we submit, that is not what Cox depended on. It's not, I mean, in fact, there's a footnote in Cox that says the fact that the batch of registration form that the district court eventually ordered that the state accept the batch of registration forms that were being mailed in was not central to the court's analysis. Cox, I think, stands for the larger proposition that you don't have to be disenfranchised. That's not what the case turned on. The other prong of our standing argument. I wonder if that proves too much, though, because if you can abstract your injury to any procedural default, then you always have standing, don't you? That, I mean, I don't think that our position needs to be that extreme, but that is correct. You're not even limiting to voting. It'd just be if you just don't like something about how the government's working, you state your interest as I'm injured because the government's not acting the way I would like it to work. Well, no. I mean, not in, we don't make, we wouldn't, no. We would not ask for such a broader position beyond. Fair enough. What's the limiting principle, then? Beyond the dictates of the NVRA itself, which does afford a private right of action for its violation, period. And this. Sure, but you'd agree you have to satisfy Article III standing as well. We do. We do, yes. So what's the continuing violation of these three plaintiffs? The continuing violation is that the default, the defect in the state's online system has not been remedied. But it doesn't matter. They're already registered to vote. That's not what, Your Honor, there are two parts to our answer. First of all, the mere, I don't want to say mere, the pure procedural violation is enough to confer standing. It is not necessary for a person to give up the right to vote to sue for a violation of the NVRA. And if it were, that would, and I think Judge Owen, you alluded to this to some degree. If it were, then citizens would be in an impossible situation, right? Because you'd have to knowingly sit out one or two elections. I mean, this case has gone through two election cycles now, and it may still have months yet to go. You'd have to sort of deliberately give up your right to vote. That's true. You could sue the moment you're denied the opportunity to register, and then we could talk about mootness in the event that you go ahead and go in person anyway. But you'd at least have standing at the time of suit, and then we could deal with mootness separately. Well, you'd have to posit a situation in which a person, you know, went online to transact business with DPS very early in the election cycle, encountered a violation of the NVRA, sent a notice letter, which is required by the NVRA. The state has time to answer that notice letter. What happened in this case is typical. There were negotiations back and forth. The state asked to meet with us. The state wanted to hear more about our claims. And, you know, months went by during that process, and that's all to the good, right? And then the state ultimately declined to make the changes that we claim are required, and then we filed suit, and then a busy district court judge got to us when he could get to us, and all of this would have to happen. And, of course, the plaintiff would have to have a lawyer ready to go, and, you know, all of this would have to happen, and then there would be an appeal and so on and so forth. So it's theoretically possible, yes, that that is true. But, again, it ought not to be the rule that a plaintiff should have to forego the right to vote, right? I mean, that would be why enact that rule. The other part of our standing argument, though, is that we have a likelihood of future harm, that these plaintiffs, these very three plaintiffs, testified that they are likely they intend to interact with TPS again in the future. Let's get very specific about that. When you say testified, are you referring to the affidavits, or is there anything beyond that? I think they were each deposed, and they said that. What can you give me? Because I've seen the affidavits. Or maybe it was. Yeah. What did they say specifically as to their future plans? All right. Plaintiff Stringer, this is at ROA 2475. He talks about the several times he's moved in the past. Plaintiff Woods, this is, his testimony is at 2507 to 2508. He said, and this is particularly pertinent, it doesn't, he doesn't care if he thinks he's registered to vote. He'll try to register every time he's offered the opportunity so that he can make sure he's registered. You can go online to, you know, to renew your, even though, you know, you can renew your driver's license even though your registration may be in effect. You are allowed, if you need to renew your license, you can go online just for the purpose, and do that just for the purpose of checking your registration status. So that's. Just to be clear, the violation that you're concerned about only occurs when you move from one county to another. Right? It doesn't occur. It's a simple question. It doesn't occur from an intra-county move. I don't, I don't, I believe, I don't want to concede that, Your Honor, but I will be candid and say I'm not, I was not prepared for that argument because that argument about in-county changes was not made either below or in the briefs. I'm just not familiar with that. Okay, but is it the case, though, that this problem only occurs because you move from one county to another? That's when you're deprived of the right to, you have to re-register. For change of address purposes, yes. Exactly. So is there any allegation that any of these plaintiffs have a specific intent in the future, not past, but in the future, to move, not just to move houses. None of them testified, none of them testified I intend to move in the next few years, I have plans to move in the next few years. But certainly the district court was justified in concluding from the evidence of their frequent past moves. I mean, for example, Dr. Woods has moved several times in just the last few years. Jared Stringer has registered to vote in four different counties in Texas in the last 25 years or so. Hernandez. Hernandez moves less frequently or, you know, no, there's less evidence about Hernandez. But that kind of evidence was sufficient for the district court to conclude that there is a likelihood that these people will move again. And where does that come from? Sure, though, because the district court talked about injury to the plaintiffs and others. That's true. I thought it was sort of a telling statement that the district court kind of needed others as a crutch. And unfortunately, these are very interesting substantive issues. I wish we could get to them. I'm just worried that we haven't satisfied the letter of the law when it comes to standards. I think that was an entirely legitimate ground on which it is appropriate to consider the likelihood of others encountering this same problem, particularly in election cases. There are a lot of cases that say that. Admittedly— You brought a class action? I'm sorry? You brought a class action. Would that have helped? I mean, typically in civil rights cases like this, you can avoid standing problems by at least either finding that plaintiff, that elusive plaintiff that satisfies all these factual elements. I've done this work myself, so I understand it can be difficult, or by doing a class action. We could have brought a class action, and unquestionably the resourceful lawyers at the State would have immediately accused our plaintiffs of not being typical or adequate class representatives or having commonality. Because had these three plaintiffs been denominated as class representatives in addition to having their individual claims, that's what the claim would have been, right? The defense would have been that these plaintiffs ended up being registered. These plaintiffs, you know, can't possibly — I mean, how are we going to know — how can a class ever be certified? Because we'd have to go into individual inquiries about every voter out there and whether or not he or she intends to move. Did the plaintiffs in this case know one another? I don't believe they do. Your clients? No. These are — these — no. So how did you find them? They contact a complaint line about — they contact the Texas Civil Rights Project that maintains a voting rights complaint line. And there are — you know, they're certainly not the only people that have complained, but that's how they came into this litigation. I do want to advert briefly to the notion about other — this being likely to affect other people. That is, I think, you know, the cases indulge that in election or, you know, voting rights. The cases encompass that idea, particularly when it comes to election and voting cases. I will acknowledge that they tend to be mutinous cases, formally speaking, and not threshold-standing cases. But it is — but — but — I guess what I'm asking is would it require us to break new ground from the standpoint of Article III law to reach the merits in this case? That's what concerns me about reaching the merits. I don't think so, Your Honor. I think that these plaintiffs are on a spectrum of what is likely to happen in the future with these plaintiffs. These plaintiffs are at the complete other end of the spectrum from, for example, the plaintiffs in Lujan or the plaintiff in Machete. But in terms of a voter registration case, do you have a case where it didn't deprive the plaintiffs of standing the fact that they, in fact, were registered at the time they sued? Cox. That's what I'm looking for. Cox and — You can see that Cox actually technically — we can quibble about the reasoning of Cox, but factually speaking, Cox dealt with people who did not have their forms. Cox, yes. I mean, Cox can be distinguished on that technical ground. It's not what — I think the holding is a more overarching holding. And then you get to Arcia. And Arcia were two people who had been, because of their surnames, you know, improperly excluded from a list of — excluded as noncitizens, mistakenly, from the voter rolls in Florida. By the time, you know, at the time of decision, or at the time of suit, rather, they — they, you know, the mistake had been rectified and they were registered to vote. Now, what is — you know, how much more likely was that, really, than our plaintiffs moving again? And, you know, is it really likely that these two plaintiffs who had already made themselves known to the State and correct — and had that mistake about their citizenship corrected were going to be erroneously excluded again? The other thing I think I don't want to forget to point out is that — is that the judge was justified, and we have — you know, we cited this evidence in our brief, in taking into account census. You know, it is a known fact that many — that American citizens move a lot in their lifetimes. It would be — I think we asked the Court to take judicial notice of that evidence, which — of that kind of evidence, which the Court has done many times. But anybody could obviously cite that, right? That's the very definition of generalized injury. Anybody can claim that, in theory, as an average of — It is — it is background evidence as to what is likely that these particular plaintiffs will do. Why did the doctor move 11 times? He is literally a rocket scientist, which sort of goes to the merits of it. I mean, you know — He just moved around Texas 11 times? No, no. He moved — he was sort of moving back and forth. Some of those were back and forth between Virginia and West Virginia and Texas. But he moves quite a bit. He is engaged in various aerospace programs. And, you know, I can't really answer that question beyond that. I've got less than a minute and a half to devote to the merits. And I guess I want to focus in on what the State's main contention seems to be, which is we are required to obtain a signature that, you know, Section 205-04-A1 says, you know, there must be a simultaneous application for voter registration unless the voter fails to sign the application. The NVRA does not say what that means. It does not say what kind of signature. It does not say a physical signature. And we have briefed amply, I think, and I think there's really no dispute about this, that — two things. The State does not use physical signatures in any meaningful way. The State only uses electronic signatures. And even in person, when DPS collects a physical signature from you, it doesn't send that to the Secretary of State. It only sends an electronic signature. Second, there are many ways to — that says you acknowledge by clicking here that we will use your electronic information or we will use your previously supplied electronic signature. I'm sorry. Thank you. Can you briefly deal with the RCIA case? Yes. The RCIA case — so there are two main points to make about RCIA. RCIA was a case really about future injury because the plaintiffs in RCIA were individuals who had been flagged improperly as potential noncitizens through some kind of program operated by the Florida Secretary of State. Now, they had not actually been disenfranchised, but the court held that they had a reasonable — or they had a legitimate fear that they would be injured in the future. And the reason — Is that the same thing here? No, it's not. The reason that they did is because in that case, the Florida Secretary of State had announced that he intended to perform a similar — I don't know what you'd call it, maybe a voter purge or a search for noncitizens before the next election. And the specific claim there was that what the Secretary of State was doing was improper because it encroached too much on the election period within 90 days of the election. So factually it's distinguishable because there was an actual threat and there was reason to believe that if he had caught them before, they would get caught up again. But one other thing that I need to say about RCA is that in our view, as we've explained in the briefs, the Eleventh Circuit did not apply the right standard. The Eleventh Circuit applied a reasonable probability, but the Supreme Court has applied a certainly impending test. And so — but under either test, the plaintiffs here can't meet it. I want to go back to something that my colleague said. He said that none of the plaintiffs testified that they are planning to move. That's effectively a concession that they lack standing because it forces them to focus entirely on an abstract injury that is completely generalized. They say, well, we suffered a denial of our right to a simultaneous change of address and voter registration update. That might be relevant if they could seek damages for a past harm, which they can't and they don't. But they seek prospective injunctive relief here. So whatever — What about just a declaratory judgment? That can't work either because it would be entirely retrospective with respect to them. It leads us to the same problem, which is any relief here would not remedy any concrete harm. Well, it would be a declaration that it's a violation of the law, and I assume the state would take that to heart and not try to enforce a provision that has been held by a federal court to violate federal law. Well, of course not. But the point for standing is that the plaintiffs have to do much more than show that there's an abstract question that might generally benefit everybody by telling the state to obey the law. The Supreme Court has specifically rejected — and I think I heard plaintiffs' counsel say that a bare procedural violation is enough. The Supreme Court has specifically and consistently rejected that notion. Among other cases, Summers v. Earth Island at 1149 to 1150 expressly rejects that notion, and we think that controls here. A brief word about Cox. As Your Honor pointed out, the plaintiff in that case, that was a case about present injury because at the time the plaintiff filed suit, she had not in fact been registered to vote. The state had refused to process her voter registration because it was submitted, I think, in a group by an organization. And so that is a clear distinction from this case. And so unless there are further questions, I'll close by saying that this case can and should be resolved on standing, and we urge the case to reverse and render judgment for the state.